# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**UNITED STATES OF AMERICA**

**vs.**                                        **3:00cr48/LAC**
                                               **3:07cv247/LAC/MD**

**WILLIAM HARRY WEST**

---

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255  (doc. 1588).  The government has filed a response (doc. 1590) and the defendant has filed a reply  (doc. 1606).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.


## I.  BACKGROUND

Defendant was charged in 21 counts of a third superseding indictment with conspiracy to commit wire fraud or securities fraud, conspiracy to engage in or attempt to engage in a monetary transaction of criminally derived property of a value greater than $10,000, and nineteen counts of engaging or attempting to engage in specific monetary transactions affecting interstate or foreign commerce, involving criminally derived property of a value greater than $10,000, which funds were in fact

derived from specified unlawful activity, wire fraud.  (Doc. 388).  The alleged fraud took place as part of a complex "Ponzi" scheme[1] wherein wealthy individuals were induced to invest large sums of money in exchange for unusually high rates of return.   The facts surrounding the offense conduct are more fully set forth in the defendant's presentence investigation report.

Defendant was represented by retained counsel Barry W. Beroset, Esq. Following a six week jury trial involving eight of the ten charged defendants, defendant West was convicted on all counts except Count Six, which was dismissed by motion of the government at the close of its case.   (Doc. 493).   Defendant filed a motion for judgment of acquittal and for new trial, (doc. 504), which was denied. (Doc. 523).

The PSR calculated defendant's base offense level at 17, applied a two level adjustment for the wire fraud being the proceeds of unlawful activity,[2] and an eleven level adjustment due to the quantity of the laundered funds.[3]  (PSR ¶ 110, 111, 112). The offense level was also increased by two due to defendant's role in the offense, (PSR ¶ 114), yielding a total offense level of 32.  (PSR ¶ 120).  Defendant's criminal history category was 1.   The PSR noted that although the relevant sentencing guidelines range was 121 to 151 months, the statutory maximum sentence on Count 1 was 60 months and the statutory maximum on the remaining counts was 120

---

[1]Ponzi schemes are a type of illegal pyramid scheme named for Charles Ponzi, who duped thousands of New England residents into investing in a postage stamp speculation scheme back in the 1920s. Ponzi thought he could take advantage of differences between U.S. and foreign currencies used to buy and sell international mail coupons. Ponzi told investors that he could provide a 40% return in just 90 days compared with 5% for bank savings accounts. Ponzi was deluged with funds from investors, taking in $1 million during one three-hour period.  Though a few early investors were paid off to make the scheme look legitimate, an investigation found that Ponzi had only purchased about $30 worth of the international mail coupons. Decades later, the Ponzi scheme continues to work on the "rob-Peter-to-pay-Paul" principle, as money from new investors is used to pay off earlier investors until the whole scheme collapses. http://www.sec.gov/answers/ponzi.htm

[2]Defendant objected to this adjustment. (Doc. 575 at 8).

[3]Originally, a twelve level adjustment was applied, but defendant objected, contending that the adjustment should be eleven instead of twelve levels.  (Doc. 575 at 5-7).

months.  (PSR ¶ 156).  Defendant filed objections to the PSR (doc. 575), as well as a memorandum in support of a downward departure pursuant to § 5K2.0. (Doc. 621).

The court sentenced defendant to the statutory maximum terms of 60 months imprisonment on Count 1 and 120 months on the remaining counts, to be served concurrently, except that the 120 month term was set to commence after the defendant had served 16 months on count 1.  His total sentence was thus 136 months imprisonment, 3 years of supervised release, and a $100,00 special monetary assessment on each count.  He was also ordered to pay restitution of $25,517,666.46 jointly and severally with the co-defendants.  (Doc. 624, 655).

Defendant filed a motion for release pending surrender (doc. 651), which was denied (doc. 716), as was his motion for release pending appeal.  (Doc. 738, 913).  Defendant adopted a motion for new trial filed by two co-defendants (doc. 1063), and this motion was also denied.  (Doc. 1066).  The Eleventh Circuit affirmed the district court's order on this motion.  (Doc. 1167).

In defendant's direct appeal of his conviction and sentence he contended that count two, which charged him with conspiracy to engage in monetary transactions affecting interstate or foreign commerce in violation of 18 U.S.C. § 1956, failed to allege an offense, that the trial court erred in the admission of certain evidence, in denying his motion for a new trial, and in denying his motion for a severance, and finally that there was insufficient evidence to convict him.  The Eleventh Circuit affirmed defendant West's convictions and sentences on February 27, 2004. (Doc. 1184, 1195).

Defendant filed numerous post-appeal motions and petitions challenging his conviction and sentence.  His verified petition and presentment for correction of errors, immediate release of petitioner, full discharge of charges and judgment liability and closure of case with an incorporated memorandum of law was denied, (doc. 1187, 1191), as were his motion for reconsideration (doc. 1196, 1197), his request for an emergency evidentiary hearing on various matters, (doc. 1193, 1194),

his verified notice of fault, (doc. 1202, 1204), his verified notice of consent (doc. 1207, 1208), his verified petition for the discharge of all liability (doc. 1209, 1211), and his verified motion to alter or amend pursuant to Rule 59(e) (doc. 1210, 1212).  He appealed the court's denial of the latter motion, (doc. 1213), but voluntarily dismissed that appeal.  (Doc. 1232).

The defendant filed a petition for certiorari with the United States Supreme Court which remanded his case for further consideration in light of *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).  The Eleventh Circuit reinstated its previous opinion and affirmed defendant's convictions and sentences on November 23. 2005.  (Doc. 1397).  The mandate issued on January 17, 2006.  The Supreme Court denied defendant's renewed petition for certiorari on June 12, 2006 (doc. 1496).

The instant § 2255 was timely filed on June 6, 2007.  (Doc. 1588).  In the present motion, defendant separates his claims into nine grounds for relief under the Fifth and Sixth Amendments. The government opposes the motion in its entirety.

## II.  LEGAL ANALYSIS

### A.  APPLICABLE LEGAL STANDARDS

#### 1.  General Standard of Review

The grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would,

if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981); *Hidalgo v. United States*, 138 Fed.Appx. 290 (11th Cir. 2005).  Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.  *Nyhuis*, 211 F.3d at 1343 (quotation omitted).  Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are

generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn,* 365 F.3d at 1234; *Bousley,* 118 S.Ct. at 1611 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing

is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

## 2.  Ineffective assistance of counsel claims

Although defendant separates his petition into nine grounds for relief, one of his claims is an ineffective assistance of counsel claim in which he claims that counsel was constitutionally ineffective for his failure to raise or preserve all of the grounds raised in the instant petition.  Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993).  To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002  (11th Cir. 2007).  In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs.  466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th  Cir. 1992).  "[R]eviewing courts must indulge a strong

presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*,  466 U.S. at 689, 104 S.Ct. at 2065.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 496 F.3d 1270, 1281 (11th Cir. 2007); *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)).  When examining the performance of an experienced trial counsel, such as defendant's attorney in this case, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.  For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).  Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).  Or in the case of

alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

Under this standard, counsel cannot be found ineffective for failing to preserve or argue a meritless claim*. See Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking

in merit); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful).

## B.  <u>DEFENDANT'S CLAIMS FOR RELIEF</u>

### <u>Ground One: Severance</u>

Defendant first contends that his trial should have been severed from that of his co-defendants.  This issue was addressed on direct appeal, both directly by the defendant and through his adoption of the arguments raised in the brief of co-defendant Matz.  (Doc. 1184 at 9-11, 35-36).  Thus, it may not be relitigated here. *Nyhuis; Mills; supra.*  To the extent the defendant attempts to raise variations of the severance arguments that were raised on appeal, they are procedurally barred, *Lynn; Bousley; supra*, or without merit.  *See United States v. Novaton*, 271. F.3d 968 (11th Cir. 2001).

### <u>Ground Two: Jury Misconduct</u>

Defendant contends that he was prejudiced by juror misconduct in that lead juror Kathy Grover had daily conversations with her boss, attorney Schofield, about the trial.  Co-defendants Melody Rose and David Bishara filed an application for leave of court to interview the petit jurors to determine the existence of juror misconduct, which was opposed by the government.  (Doc. 999, 1004, 1011, 1020,

1024).  The district court held a hearing on this issue on September at which both the defendants and the government presented witnesses in support of their claim. The court orally denied the motion at the hearing.  (Doc. 1033). Defendants Rose, Bishara and West filed motions for a new trial based on the same facts presented in their Application for Leave to Interview the Petit Jurors, which motions were also denied.  (Doc. 1062, 1063, 1066).  Defendant appealed the district court's denial of the motion to interview the petit jurors.  See 2003 WL 22345764 (Plaintiff's appellate brief).  The Eleventh Circuit held that the district court did not abuse its discretion in denying the defendant's Motion for a New Trial.  (Doc. 1167).  Thus, because this issue was reviewed by the appellate court, defendant may not relitigate it here. *Nyhuis; Mills; supra*.  Furthermore, to the extent defendant incorporates a claim of ineffective assistance of counsel into this argument, he has not shown that counsel could or should have litigated this matter differently, such that a different outcome would have ensued.

## Ground Three: Government's improper statements prejudiced defendant

The defendant claims that the government made improper and inflammatory statements during the trial and during her closing remarks that resulted in prejudice to the defendant.  He lists, without record citation, eighteen separate statements allegedly made by the prosecutor.[4]  (Doc. 1588, brief at 13-14).  This issue is

---

[4]1.  The defendants admitted their own guilt.

2.  There is $20 million missing and floating around out there somewhere (waving her fingers in the air), and these defendants have it (pointing directly at the petitioner and codefendants).

3.  Mr. Matz purchased an insurance policy that was not real and was only used as "bait" to lure the investors into the program.

4.  WEST participated in another illegal scam with David Gilliland called LUXOR as soon as Hammersmith had its problems.

5.  WEST was promoting another deal even after he was indicted.

6.  Everything in Bridgeport was a secret (referring to the investment program and the operations).

7.  Referring to David Gilliland the Government said that " . . . a decision of his guilt will be decided at another time . . . " when in fact, she knew that Mr. Gilliland had already entered into a plea agreement with the Government for substantial assistance with the case.

8.  WEST and Mr. Dohan were long time friends and knew each other dating back to their California days.

procedurally barred due to defendant's failure to raise the claim in either the district court or on appeal.  *Lynn; Bousley*, supra.  To the extent that defendant claims counsel was constitutionally ineffective for his failure to raise this claim, he has not met his burden of showing either deficient performance or prejudice.

"A criminal trial does not unfold like a play with actors following a script." *United States v. Young,*  470 U.S. 1, 10, 105 S.Ct. 1038, 1043, 84 L.Ed.2d 1 (1985). *(quoting Geders v. United States*, 425 U.S. 80, 86, 96 S.Ct. 1330, 1334, 47 L.Ed.2d 592 (1976)).  It should come as no surprise that "in the heat of argument, counsel do occasionally make remarks that are not justified by the testimony, and which are, or may be, prejudicial to the accused." *Id.*  (quoting *Dunlop v. United States*, 165 U.S. 486, 498, 17 S.Ct. 375, 379, 41 L.Ed. 799 (1897)).

"A prosecutor's comments [in closing argument] must be viewed in the context of the record as a whole, and will be the basis of reversal only if they result in prejudice affecting the substantial rights of the defendant." *United States v. Mock*, 523 F.3d 1299, 1302 (11th Cir. 2008) (citing *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997).  A defendant's substantial rights are prejudicially affected

---

9.  WEST and Gilliland go way back 12 years to California.

10. At the beginning of trial the Government stated that the illegal activities brought in $95 million and were under the defendants' control.  In closing arguments the figure was then changed to $63 million with $20 million missing and under the defendants' control.  At sentencing the number changed to $58 million, $20 million missing and $25.5 million in restitution.

11. Mr. Papagni lost money in the investment when in fact, he testified that to the contrary, he made "profits" and was paid out $1.4 million.

12.  "They may have taken in $10 million more.  We do not know and they may have been paid."  She stressed, "That could have happened.

13.  "And we think that it completely and totally under represents what these defendants actually gained, because there is just no way. . . "

14.  Why didn't the defendants invest their own money?

15.  The prosecutor mentioned some unknown and unidentified letter she claimed was written by WEST which stated that, "If anyone does due diligence, they are out of here."

16.  They got their money and they still have it.

17.  The Government mentioned a RICO suit filed against Bridgeport by its witness, Gregg Skibbee, for non-payment of commissions due, knowing that Bridgeport never paid any commissions.  The suit was dropped, but the reason stated by Skibbee was that, "They had better attorneys than we did."

18.  The Government stated that there were over 1,000 clients, yet only (98) claims were allowed, many from people who never signed a Hammersmith client contract.

when a reasonable probability arises that, but for the remarks, the outcome of the trial would have been different. *United States v. Eckhardt*, 466 F.3d 938 (11th Cir. 2006) (citing *United States v. Wilson*, 149 F.3d 1298, 1301 (11th Cir. 1998)). When the record contains sufficient independent evidence of guilt, any error is harmless. *Id.* (citing *United States v. Adams*, 74 F.3d 1093, 1097-98 (11th Cir. 1996). In closing argument, a prosecutor is not prohibited from making "colorful and perhaps flamboyant" remarks if they relate to the evidence adduced at trial. *Mock,* 523 F.3d 1302; *Bailey,* 123 F.3d at 1400; *United States v. Jacoby*, 955 F.2d 1527, 1541 (11th Cir. 1992). Furthermore, because the statements made in closing are not evidence, "the district court may rectify improper prosecutorial statements by instructing the jury that only the evidence in the case is to be considered." *Mock,* 523 F.3d at 1302 (citing *Jacoby*, 955 F.2d at 1541).

The statements identified by the defendant, including those fairly characterized as "colorful," were related to evidence adduced at trial, and did not jeopardize the overall fairness and integrity of the trial. Several of the alleged statements were not related to the case against the defendant specifically, or were merely factual statements that could have been construed as either "prejudicial" or irrelevant to the case against the defendant, depending on the context in which they were made. The prosecution is not prohibited from introducing prejudicial evidence or from making arguments that weigh against the defendant's interest. To the extent that defendant claims the prosecutor misrepresented the evidence in her closing argument or at any point during the trial, the district court specifically instructed the jury that "anything the lawyers say is not evidence in the case. It is your own recollection and interpretation of the evidence that controls. What the lawyers say is not binding ...." (Doc. 485 at 4). The jury is presumed to have followed the judge's instructions. *Hallford v. Culliver,* 459 F.3d 1193, 1204 (11th Cir. 2006); *United States v. Bennett,* 368 F.3d 1343, 1351 (11th Cir. 2004); *United States v. Calderon*, 127 F.3d 1314, 1334 (11th Cir. 1997); *United States v. Wilson,* 149 F.3d 1298, 1302 (11th Cir.

1998).  Therefore, even if any of the statements were unfairly prejudicial, the district court's instruction rectified any harmful effect.  See *United States v. Mock*, 523 F.3d 1299, 1302 (11th Cir. 2008)(holding that language identical to that used by the district court in this case rectified any harmful effect of prosecutor's closing argument); see also *Jacoby*, 955 F.2d at 1541.

<u>Ground Four: Missing Trial Transcript Tapes</u>

Defendant claims that he has been prejudiced by the missing audiotapes of the trial because two important statements are missing from the official transcription of the government's closing statement: 1) the defendants admitted their own guilt and 2) there was $20 million missing and the defendants have it. (Doc. 1588 brief at 20).  Defendant claims that he noticed these omissions "immediately upon receipt" of the transcripts, in fall of 2001.  (*Id.*)  With respect to the first statement, defendant claims that counsel objected to the government's prejudicial and incriminating statement that the defendants had "admitted their guilt" by requesting a mistrial, but that the court overruled the objection.  He asserts that this entire exchange is "missing" from the record.  He does not contend that any objection was made to the second statement, just that it alone was omitted from the record.

Defendant takes the position that because the original audio tapes have been destroyed, he has been "prevented from proving that these spurious statements made by the prosecutor reached desperately beyond constitutional fairness and fact, damaging the integrity of the trial process in order to get a conviction." (Doc. 1588, brief at 24).  He maintains that because the statements were missing, he could not prove to the Eleventh Circuit that he was subjected to an unfair trial or enjoy a meaningful appeal.  (Doc. 1588, brief at 23).

The third statement defendant contends is "missing" is from the transcript of an evidentiary hearing that took place after trial.  Defendant claims that at this

hearing, government witness Milo Segner testified under cross examination that the government's accounting was "67% flawed and totally unreliable," but that this statement was not contained in the official transcript.  (Doc. 1588, brief at 21).

Defendant faults his counsel for failing to investigate these missing statements despite his repeated requests.  He argues that the government's failure to maintain the original sound recordings was in violation of 28 U.S.C. § 753(b) which provides that the court reporter, after affixing his official certificate shall file with the clerk "the original shorthand notes or other original records" and that the clerk "shall preserve them in the public records of the court for not less than ten years." This same section further provides that "[t]he transcript in any case certified by the reporter or other individual designated to produce the record shall be deemed prima facie a correct statement of the testimony taken and proceedings had."  28 U.S.C. § 753(b) ¶ 5.

In its response to the instant § 2255 motion, the government "denies without qualification than any of the three statements were made."  (Doc. 1590 at 10). Defendant's trial counsel states in his affidavit that this issue was "thoroughly examined subsequent to trial and counsel could find no one, nor any evidence to corroborate Mr. West's belief that statements made during closing argument were not part of the official transcript."  (Doc. 1590, exh. 1 at 2).  Furthermore, the government notes that despite defendant's assertion that he "immediately" noticed the statements were missing from the transcripts in fall of 2001, he failed to raise this issue on appeal in his initial brief filed in December of 2002.  See 2002 WL 32511076.

In rebuttal, defendant points to the motion for judgment of acquittal, motion for new trial and memorandum in support (doc. 504), where counsel states:

> During the government's closing argument, counsel for the Government contended in words to the effect "that the Defendants admitted their guilt" when in fact no such statement or admission had been made by any of the co-defendants in trial and certainly none had been made by the Defendant West.  Defendant West submits that the

**Court erred in denying the Defendant's objection and Motion for Mistrial.**

(Doc. 504 at 7-8).  Counsel then proceeded to argue that statements of the prosecutor may justify reversal if they are improper and prejudicial to a substantial right of the defendant. In its response to this motion, the government disagreed with the content of defendant's representation of the words of the AUSA in closing argument, maintaining that the prosecutor "did not state or infer that the defendants had in any way admitted their guilt," and noting the absence of confessions by any of the defendants  during the six week trial.  (Doc. 512 at 5).

Defendant also directs the court's attention to document 738, his motion for release from custody pending appeal.  Therein, defense counsel refers to the government's statement in its earlier response to release of defendant West that "evidence presented at trial proved that the scheme involved substantial use of overseas bank accounts, and approximately $20 million of stolen investor funds are still missing" and the fact that the court denied West's motion for release based in part upon these allegations.  (Doc. 738 at 1-2; citing doc. 478 at 2).  This does not prove defendant's assertion that this statement was made by the government during closing arguments or that the court reporter engaged in selective transcription of the record.

The issue of the "missing tapes" was not raised on appeal and is procedurally barred.  Furthermore, the specific statements defendant would like to challenge were discussed in the previous section of this recommendation.  Even if the statements were made, in light of the district court's specific instructions to the jury, any error was cured under *Mock*.  *Mock*, 523 F.3d at 1302.

The apparent contradiction between defense counsel's affidavit stating that he could not find support for his client's assertion that statements made during closing were not included in the official transcript and counsel's use of one of such statements in the motion for a new trial cited above is unexplained.  The statement

clearly was not in the record, and the fact remains that defendant has submitted no evidence to substantiate his claims that the statements were made.  Furthermore, he does not suggest what else counsel could or should have done to prove that the allegedly missing statements were made.   For the foregoing reasons, he has not established that he is entitled to relief.

Ground Five: Violation of Fed.R.Crim.P. 6(f)

Defendant next claims that there was irregularity in presentation of the indictment.  He asserts that there is no record evidence that the first, second and third superseding indictments were presented in open court.  Defendant maintains that this was a violation of his due process rights and a "structural error" that is not subject to either plain error or harmless error analysis.

This claim is procedurally barred due to defendant's failure to raise it on appeal.  *Nyhuis; Mills, supra.*  It is also untimely under Federal Rule of Criminal Procedure 12(b)(3)(B). This rule provides generally that motions alleging a defect in the indictment must be made before trial, although a claim that the indictment fails to invoke the court's jurisdiction or fails to state an offense may be made at any time while the case is pending.   Absence of affirmative proof in the record that Fed.R.Crim.P. 6(f) was followed does not prove that it was not.  *See United States v. Pinero*, 948 F.2d 698 (11th Cir. 1991); *United States v. Hopkins*, 458 F.2d 1353, 1354 (5th Cir. 1972); see also *United States v. Joseph*, 205 Fed.Appx. 765, 767 (11th Cir. 2006) (in reviewing a rule 35 motion, court was "not persuaded by [defendant's] contention that his sentence should be vacated because the record lacks evidence that his indictment was returned in open court").  Furthermore, defense counsel asserts in his affidavit that he investigated this claim after defendant raised it after the trial and found no evidence to support his client's claim.  (Doc. 1590, exh. A at 2).  Indeed, counsel and the defendant corresponded about this matter after the trial.  Counsel mailed defendant a copy of the third superseding indictment on October 10,

2003 along with a letter noting that the indictment had been stamped as having been filed in open court on February 21, 2001, and thus that there was no need for a transcript as the court records clearly reflected this filing.  (Doc. 1606, exh. 38). Defendant wrote back to counsel, "in an effort to be very thorough and conservative," and again requested a copy of the transcript to "prove" the document had been filed in open court. *Id.*  Counsel responded that the indictment clearly had been filed in open court.  After yet another round of communication between the defendant and counsel, defendant wrote to the clerk, who informed him that "All Indictments are filed in open court before a U.S. Magistrate Judge upon the Grand Jury making returns" and that no record was created for his indictment because it was not a hearing.  "Therefore, there is nothing that can be provided to you other than the indictment itself, which has been previously provided."  (Doc. 1606, exh. 39).

Defendant's conclusory assertion that proper procedures were not followed does not entitle him to relief under prevailing law, and he has not shown that counsel was constitutionally ineffective in his failure to pursue this matter further.


Ground Six: Invalid Count Two

Ground six of defendant's motion contains two parts.  First, defendant contends that Count Two of the third superseding indictment charging him with a violation of 18 U.S.C. § 1956(a)(1)(B)(I) was invalid.  He asserts that he was charged with multiple counts of money laundering "from a date uncertain, but at least by January 1996, and continuing thereafter up to and including the date of this indictment."  (Doc. 388 at 22).  Defendant argues that this language violated the intent of Congress when it authored the money laundering statute, because each transaction or transfer of money constitutes a separate offense and should be charged accordingly; money laundering is not a "continuing offense."  *Citing United*

*States v. Kramer*, 73 F.3d 1067, 1072 (11th Cir. 1996); *United States v. Martin*, 320 F.3d 1223, 1227 (11th Cir. 2003).

The government now argues in its response that defendant is procedurally barred from relitigating the same claim that he raised on appeal. A careful reading of his claim reveals that the basis for the instant challenge to Count Two of the indictment is not the same challenge that was litigated on appeal.[5] However, defendant is still subject to the procedural bar, as he could have, but did not, make the argument he makes herein on appeal. *Lynn,* 365 F.3d at 1234-35; *Bousley,* 523 U.S. 614, 118 S.Ct. at 1610.

Even if defendant were not subject to the procedural bar, he would not be entitled to relief. First, it appears that defendant has misread the indictment. He was charged in counts 3-10, 12-19, 21-23 of the third superseding indictment with specific charges of money laundering on dates certain. Count Two of the indictment charged him with *conspiracy* to commit money laundering in violation of 18 U.S.C. § 1956(h). This subsection provides that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." 18 U.S.C. § 1956(h) (West 2008).

To the extent defendant contends that the "continuing offense" of conspiracy to commit money laundering is not a valid offense, and that counsel was ineffective for his failure to make this argument, his position is without merit. A conspiracy very frequently, although not always, includes continuing conduct. And, there is abundant case law examining and upholding convictions for the offense of conspiracy to commit money laundering under this section. *See, e.g., United States*

---

[5]Defendant challenged whether Count Two properly alleged an offense on appeal. He contended that Count Two did not allege an offense because it neglected to allege that wire fraud was indeed the specified unlawful activity. (Doc. 1184 at 5). The appellate court found that because Count Two incorporated parts A, C, and D of Count One of the indictment, it was sufficient to put defendant on notice of the charges against him and prevent double jeopardy concerns. (*Id.* at 5-6).

*v. Edwards,* 526 F.3d 747 (11th Cir. 2008); *United States v. Dohan*, 508 F.3d 989 (11th Cir. 2007); *United States v. Requeiro,* 240 F.3d 1321 (11th Cir. 2001); *United States v. Rudisill*, 187 F.3d 1260 (11th Cir. 1999);  *United States v. Pena-Rodriguez*, 110 F.3d 1120 (5th Cir. 1997) (affirming conviction for conspiracy to launder money); *United States v. Nelson*, 383 F.3d 1227 (10th Cir. 2004); *United States v. Henry*, 325 F3d 93 (2nd Cir. 2003); *United States v. Rivera-Rodriguez*, 318 F.3d 268 (1st Cir. 2003).  There was no valid objection for counsel to make and his performance was not constitutionally ineffective.

The second part of ground six does not address Count Two, but rather appears to address the specific money laundering charges against him.  Defendant states that although he was convicted under 18 U.S.C. § 1957[6] and 18 U.S.C. § 2,[7] the jury's verdict did not properly reveal the specific charge and specific theory of inculpation.  Defendant claims that the verdict form should have explained whether he was an "aider and abettor" or a "principal" with respect to the money laundering charges, and because it did not, he has spent years in prison "completely unaware of what specific offense he was charged with committing (§ 1957 or § 2) on nineteen (19) counts."  (Doc. 1588, memo at 31).

Defendant cites two cases in support of his claim: *United States v. Fulbright,* 105 F.3d 443 and 451 (9th Cir. 1997) and *Keating v. Hood*, 191 F.3d 1053, 1063 (9th Cir. 1999).  Each of these cases held that where a jury verdict is legally insupportable (erroneous) on one ground, but supportable on another, the verdict must be set aside if it is impossible to tell on which ground the jury relied in reaching its verdict.  Defendant does not contend that either of the two theories (conviction as a principal or as an aider or abettor) was "legally insupportable" and thus, these cases are

---

[6]This statute prohibits engaging in monetary transactions in property derived from specified unlawful activity.

[7]This statute provides generally that anyone who commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, or causes on unlawful act to be done is punishable as a principal.

inapposite.  Furthermore, there is no requirement that the aiding and abetting statute be cited in the indictment for conviction to be obtained under this theory.  *United States v. Swatzie,* 228 F.3d 1278 (11th Cir. 2000); *United States v. Broadwell,* 870 F.2d 594, 607 (11th Cir. 1989); *United States v. Munoz,* 681 F.2d 1372 (11th Cir. 1982) (citing *United States v. Masson*, 582 F.2d 961 (5th Cir. 1978)).  A conviction may be properly based on a defendant's actions as a principal, aider or abettor, or a *Pinkerton* conspiracy theory.  *Broadwell,* 870 F.2d at 607.  In this case the court properly instructed the jury on the law regarding aiding and abetting, and there was no error.  *See Broadwell* 870 F.2d at 607 n.32 (quoting jury instructions virtually identical to those given in this defendant's case); doc. 485 at 21.  There is no basis for relief on this ground.

### Ground Seven: Due Process violation

Defendant claims that his due process rights were violated because he was not allowed to call an expert CPA witness, Marvin Beasley, to testify that the government's accounting with respect to the amount of loss, as presented at trial, was incomplete, unreliable and flawed.  Defendant notes that the burden of proof is on the government to show the amount of restitution by a preponderance of the evidence.  18 U.S.C. § 3664(d).  In fixing the amount of restitution, the court may consider hearsay evidence bearing "minimal indicia of reliability" so long as the defendant is given the opportunity to refute that evidence.  *United States v. Hairston*, 888 F.2d 1349, 1353 (11th Cir. 1989).  He claims that he was not permitted to present Mr. Beasley's testimony, and therefore was unable to refute the government's evidence, and received a greatly enhanced sentence as a result.

This claim is procedurally barred due to defendant's failure to assert it on direct appeal.  *Nyhuis; Mills; supra.*  In addition, it is factually inaccurate, as defendant admits in his reply to the government's response, the first mention of Mr. Beasley was not until his Motion for Release from Custody pending appeal, filed two

months after sentencing.  (Doc. 738, ¶¶17, 19).  In that motion, counsel asserted that Mr. Beasley had opined that "it [could] not be determined whether or not any funds are missing or unaccounted for with any degree of certainty."  Although this was not the exclusive basis for the motion, counsel requested an evidentiary hearing on the limited factual issue of the "missing money," arguing that the purported existence of any missing money should not be used as a ground for denying defendant's motion for release.  (Doc. 738 at ¶ 19).  An affidavit signed by Mr. Beasley was attached for the court's review.  The district court denied the motion for appeal bond, stating:

> At a minimum, more than a million dollars is still unaccounted for and is likely in the hands of fugitive co-defendants known to be in foreign countries.  Defendant is an experienced international operative.  His actions in furtherance of the fraud demonstrate his untrustworthiness.  These factors make Defendant a potential flight risk.  Also, Defendant has raised no substantial legal issue likely to cause an appellate court to reverse his conviction or order a new trial.  Defendant has not met the standard to be granted an appeal bond.

(Doc. 913).  Defendant has not suggested what testimony Mr. Beasley would have offered beyond that presented in his affidavit.  And clearly, the "missing money" was not the sole basis for the court's decision.  Although the government's expert had purportedly placed the figure at $20 million, the court considered only a fraction of that, or more than $1 million.  Thus,  Mr. Beasley's testimony via affidavit was considered in ruling on the defendant's motion, even without an evidentiary hearing.

Defendant appears to shift focus in his reply and contend that counsel should have moved to continue his sentencing to present the information in Mr. Beasley's affidavit.  However, he has not shown that he was prejudiced by counsel's failure to do so.  He has not alleged that any of his co-defendants' sentences were overturned based on the government's allegedly flawed accounting methods. His assertion  that Milo Segner testified that the government's accounting

method was incomplete, flawed and 67% unreliable is unsupported by the record. Thus, he has not shown his entitlement to relief.

### Ground Eight: Ineffective assistance of counsel

In this portion of his memorandum, defendant re-argues the other eight grounds for relief contained in his motion as well as raising three additional claims. Only those claims that are not encompassed in another area of this recommendation are discussed herein.

First, defendant contends that counsel was constitutionally ineffective because he subpoenaed but failed to call "former client Keith Granzon's attorney" to testify for the defense. This individual, whom defendant has not identified by name, allegedly was prepared to testify with respect to the safety of the investments, and would have shown that defendant had "outside third party legal due diligence and a reliable, valid impression that the investments of his clients were 100% secured." (Doc. 1588, brief at 36). Defendant claims the witness was released from subpoena because he felt intimidated by the Government and was afraid of being indicted. (*Id.*)

Second, according to defendant, Jim Green, another key witness who was former legal counsel for Chicago Mercantile Exchange, could have testified about how easily the investment returns claimed by Hammersmith could be generated. Counsel did not call Green to testify, and Green allegedly told defendant that he did not want to come into a federal trial, but wanted to "get everything behind him and forget about it." (*Id.* at 37).

In response to the defendant's arguments with respect to these witnesses, the government states that from the defendant's description of Granzon's attorney's testimony, it would have been inadmissible as hearsay, as the individual would have testified merely as to what banking officials told him. The government also notes as to either witness that "forcing" a reluctant witness to testify could have a serious

adverse effect on a defense case.  If defendant's characterization of the witnesses' reluctance to testify was accurate, it was within the realm of reasonable performance or trial strategy by defense counsel to not call these witnesses.  Finally, counsel states in his affidavit that "[e]ach and every potential defense witness was thoroughly discussed with Mr. West and no witness was released from their subpoena without Mr. West's concurrence.  Mr. West was a very active participant in his defense."  (Doc. 1590, exh. at 2).  In either event, defendant has not shown that counsel's performance was constitutionally deficient.

Defendant next contends that counsel was ineffective because he failed to provide his client (or other defense counsel) with summaries of financial information prepared by Milo Segner so that defendant could secure an expert to review the information and object to the evidence to be used against him. (Doc. 1588, brief at 38).  This issue was not addressed by the government.  However, defendant has failed to show that counsel's alleged failure to share the summaries (he does not contend that the documents from which the summaries were prepared) prejudiced his defense.

As noted above, the burden for proving a claim of constitutionally ineffective assistance of counsel is a heavy one.  While every defendant would like the best possible representation, this is not what the law requires.  The test is not whether counsel acted as the best lawyers would have done or even as most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.  *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).  "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"  *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).  Defendant has failed to meet this heavy burden on any of his ineffective assistance of counsel claims.

### Ground Nine: enhancements

Defendant's last claim is that his sentence as imposed under the mandatory guidelines system (instead of the advisory guidelines regime currently in place) violated his Fifth and Sixth Amendment rights under *Apprendi,*[8] *Blakely,*[9] and *Booker*[10] because the sentence imposed was "dramatically more severe than the facts found by the jury's verdict."  (Doc. 1588, brief at 54).

In the seminal case of *Apprendi v. New Jersey*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."   530 U.S. at 490, 120 S.Ct. at 2362-63. Defendant and his attorney corresponded numerous times about the application of *Apprendi* to his case, and each time counsel reminded defendant that his sentence was within the prescribed statutory maximum.  (Doc. 1606, exh. 51A, 51-55).

As clarified in *Blakely* three years after defendant's trial:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.  See Ring, supra*, 536 U.S. at 602, 122 S.Ct. at 2428 ("'the maximum he would receive if punished according to the facts reflected in the jury verdict alone'" (*quoting Apprendi, supra*, 503 U.S. at 483, 120 S.Ct. at 2348)) . . . .  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings.

124 S.Ct. at 2537-38 (emphasis in original, some citations omitted); *see also In re Dean*, 375 F.3d 1287, 1290 (11th Cir. 2004) (quoting *Blakely*).  In *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court

---

[8]*Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2362-63, 147 L.Ed.2d 435 (2000).

[9]*Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

[10]*United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

extended its holding in *Blakely* to the Sentencing Guidelines, holding that the mandatory nature of the federal guidelines rendered them incompatible with the Sixth Amendment's guarantee to the right to a jury trial, and it excised two parts of the Sentencing Reform Act to cure the constitutional defects.

Defendant was convicted of conspiracy to commit wire fraud and securities fraud, punishable by up to five years in prison, and conspiracy to commit money laundering and eighteen separate counts of money laundering, each of which was punishable by up to ten years in prison. In fact, he received a sixty month sentence on Count One and a 120 month sentence on each of the other counts. The district court ordered the first sixteen months of the sentence in Count One to be served consecutively to the remainder of the sentence. (Doc. 655). The defendant's total sentence was thus 136 months, which the government argues was not only within the statutory maximum sentence of 195 years that he could have received had he received the statutory maximum consecutive sentences, but also significantly lower. And, as noted above, the Eleventh Circuit re-visited defendant's convictions and sentences after *Booker* and found no error in the mid-guidelines range sentence that defendant received. (Doc. 1397). He has not shown he is entitled to relief.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 1588) be DENIED.

At Pensacola, Florida, this 17th day of July, 2008.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. <u>See</u> 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**